UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CHARLES GUIDEN                          CIVIL ACTION NO. 07-cv-0370

VERSUS                                  JUDGE STAGG

STEVE PRATOR, ET AL                     MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Charles Guiden ("Plaintiff") filed this civil action against several defendants, based primarily on his allegation that he did not receive proper medical care while housed as a pretrial detainee at the Caddo Correctional Center ("CCC"). The court previously dismissed claims against several of the defendants that were based simply on a respondeat superior theory or that asserted that jail officials did not properly respond to administrative grievances. See Docs. 19 and 31.

Plaintiff later filed a Motion for Summary Judgment (Doc. 48) and asked for judgment in his favor with regard to his medical claims. The remaining defendants filed a Motion for Summary Judgment (Doc. 56) that asked for dismissal of all remaining claims. It is recommended, for the reasons that follow, that Plaintiff's motion be denied and that Defendants' motion be granted.

**Summary Judgment Standard**

Summary judgment is proper when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. All facts and inferences must be construed in the light most favorable to the non-movant. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). But where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist. McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 288 (5th Cir. 2008).

**Summary Judgment Record**

Plaintiff, in support of his motion and in opposition to the defense motion, has filed five memoranda (Docs. 48, 60, 62, 63 and 69). Plaintiff has not submitted any competent summary judgment evidence. Rather, he makes arguments based on the medical records and grievances that are attached to the defense motion or are otherwise in the record and are not disputed in authenticity. Plaintiff also makes some assertions of fact in his unsworn memoranda that are not included in the summary judgment materials. Such assertions are not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991). Only evidence – not argument, not facts in the complaint – will satisfy Plaintiff's summary judgment burden. Solo Serve Corp. v. Westowne Associates, 929 F.2d 160, 164 (5th Cir. 1991).

The defense motion is supported by an affidavit from Sheila Wright, the medical director at CCC. Her affidavit is supported by attached copies of medical and administrative records from CCC. The affidavit testimony and medical records are competent summary judgment evidence that the court may consider in assessing the motions. Affidavits are specifically admissible under Fed. R. Civ. Proc. 56, and medical records are frequently considered on summary judgment in assessing prisoner complaints regarding medical care. See, e.g., Gobert v. Caldwell, 463 F.3d 339, 347 n. 23 (5th Cir. 2006) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

The facts set forth below are a summary of those represented by the competent summary judgment evidence found in the record. Plaintiff was booked into CCC on October 28, 2006, and he underwent an inmate screening by a booking clerk who is trained to evaluate inmates. The screening form indicates that Plaintiff reported a recent gunshot wound to the lower part of his body, notes that Plaintiff had a "large bump on left side of face," and indicates a simple "yes" in response to a question as to whether the inmate had "bleeding, bruises, draining wounds."

Director Wright, who is a registered nurse, testifies that Plaintiff was evaluated the very next day, October 29, 2006, by the CCC nursing staff. Notes from the evaluation mentioned the gunshot wound, the bump on the side of the face, and that the Shreveport Police Department had stated that Plaintiff complained of a spider bite to his head and had

been sent to LSUHSC on October 25, 2006. Plaintiff was asked whether he desired to be placed on "sick call" for medical treatment, but Plaintiff stated that he did not want sick call at that time.

Plaintiff's eventual complaint about his medical care stems from the weekend of November 11 and 12, 2006. Before discussing the events of that weekend, it is helpful to review Director Wright's explanation of the CCC policy for medical needs on weekends. Wright testifies that on weekends only emergency and serious medical needs that should not wait for treatment on Monday are evaluated by CCC medical staff. Inmates are instructed to report an emergency medical condition to housing unit deputies. The deputies are given instruction regarding the types of medical problems that should result in consultation to medical staff rather than wait for evaluation on Monday. The deputy, based on that training, evaluates the complaint and contacts medical personnel for an immediate evaluation only if the medical problems appear to be an emergency or the deputy believes that the problem is serious and should not wait for further evaluation and treatment. A physician is available only on Tuesdays and Thursdays. On other days, any emergency medical problem that requires a physician is treated at the LSUHSC.

Plaintiff's medical claim regards a problem with a bump on the back of his head that caused him problems on the weekend of November 11-12, 2006. Plaintiff alleges in one of his memoranda, not supported by competent summary judgment evidence, that he first complained of his problem to housing unit deputies Kline and Butler on Saturday,

November 11.  The deputies apparently did not believe Plaintiff's medical condition was of a serious or emergency nature so as to require medical staff be summoned to the jail on the weekend.  Plaintiff states in a grievance that he asked Deputy Wilson on Sunday, November 12 at 5:00 a.m. to be allowed to "go to medical" because of what Plaintiff termed a medical emergency.  Wilson allegedly told Plaintiff to "go eat (breakfast)."  Plaintiff asserts in another grievance that on Sunday morning at 11:00 a.m. he asked Deputy Henry if he could "go to medical" for a medical emergency, but Henry told Plaintiff that no one was in the medical department.  When Henry went on his lunch break, Plaintiff alleges that he pressed his call button and asked Deputy Gaines to "go to medical" for a medical emergency, and Gaines told Plaintiff that no one was in the medical department.  Gaines did give Plaintiff some peroxide and napkins.  Each of the deputies named above is a defendant.

Plaintiff, some time on Sunday, November 12, prepared a kite communication which was placed in a box in the housing unit to be delivered to medical staff on Monday.  The kite reads:

> I got a haircut.  I got a very big bump on the back of my head now it's turned into a very big infected bump with puss seeping out and it gives me terrible migranes [sic].  I'm in constant pain.

Director Wright testifies that the kite "clearly does not describe a medical emergency" and, if that information had been reported directly to a deputy, it would not have warranted the deputy requesting immediate medical treatment.

The next day, Monday, November 13, Plaintiff complained to Deputy Naples (also a defendant) that he was dizzy. On that same Monday, Plaintiff was evaluated and treated by CCC medical staff. Nurses' notes from the evaluation state that Plaintiff reported feeling dizzy while using the bathroom, and he lay down on a bed. Plaintiff said that the thing in the back of his head was causing the dizziness. The nurse described the condition as a two centimeter boil with drainage noted and edema to the surrounding area. Plaintiff was prescribed and administered Tylenol, antibiotics Bactrim and Bactroban, as well as anti-bacterial scrub.

Notably, the medical staff are not among the defendants at issue. It is the deputies to whom Plaintiff made his complaints that have moved for summary judgment. It is worth noting, however, that Plaintiff asserts in Doc. 63 that he received additional medical care on Thursday, November 16 in connection with the same health problem. He saw a doctor for the problem on November 21. In the several days after the weekend at issue, Plaintiff alleges that he received medication including antibiotics, medicated shampoo and pain medication. Once again, these assertions are not supported by competent summary judgment evidence.

**Analysis of Medical Care Claim**

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate

indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

The summary judgment record reflects that Plaintiff complained of what ordinary observation suggests was not an emergency medical condition. Director Wright's testimony states so directly, and there is no countervailing evidence or reasonable inference to be drawn from the existing evidence that would favor Plaintiff in this regard. The deputies to whom Plaintiff complained over the weekend did not inflict any unusual punishment on Plaintiff by following standard procedure and not calling in medical staff to look at the bump on Plaintiff's head before Monday. The record simply does not demonstrate that any deputy was presented with facts that would make his refusal to immediately call medical staff to the jail amount to the unnecessary and wanton infliction of pain repugnant to the conscious of mankind. Accordingly, all of the moving deputies are entitled to summary judgment with respect to the medical claim.

Plaintiff has repeated throughout his many grievances, amended complaints, and summary judgment submissions his contention that the deputies violated a jail policy with regard to when an inmate may declare himself a medical emergency. Plaintiff takes the view that if he, at any time, states that he is a medical emergency, the deputies must immediately

treat him as such (apparently with disregard to their objective observations of his condition). Jail officials disagree with Plaintiff's interpretation of the policy. This court need not interpret the jail policy because the court is concerned only with violations of the Constitution that give rise to Section 1983 claims. Mere violations of policies or rules do not, just because they violate a policy or rule, give rise to a constitutional violation. There is no genuine issue of material facts as to whether any defendant violated the constitution in connection with Plaintiff's medical care.

**Access to the Courts**

Plaintiff asserts in Doc. 69, one of his memoranda, that his right of access to the courts has been violated because of a delay with regard to receipt of an item of legal mail. Exhibits to the memoranda show that defense counsel mailed something to Plaintiff on January 18, 2008. This was likely a copy of the defense reply memorandum (Doc. 64) that was filed the previous day. Plaintiff filed a grievance stating that he did not receive the item until February 13, 2008 and that the item had been opened. A jail official responded that the item arrived at the jail already opened, likely by an unintended recipient, and that deputies had delivered the mail to Plaintiff on the day it arrived at the jail.

To the extent this claim is within the scope of the pleadings, it should be dismissed *sua sponte* because Plaintiff has not alleged facts to show that jail officials had any responsibility for the delay, and he has not articulated any legal prejudice caused by the delay. It certainly did not stop Plaintiff from briefing the pending motions to his heart's

content. Absent a genuine issue (or even allegation) that Plaintiff's position as a litigant was prejudiced by the delay in receiving the mail, summary judgment is appropriate on Plaintiff's access to court claim. Damm v. Cooper, 2008 WL 2705651 (5th Cir. 2008) (affirming summary judgment in a similar setting); Taylor v. Dretke, 239 Fed.Appx. 882 (5th Cir. 2007) (affirming *sua sponte* dismissal in a similar setting). Plaintiff has filed a Motion for Preliminary Injunction (Doc. 67) that seeks relief regarding the mail delay. It should be denied for the same reasons.

**Equal Protection**

Plaintiff alleges that a white inmate who sought medical treatment for a headache got treatment in less than two minutes, while Plaintiff (who is presumably not white) had to wait through a weekend. Plaintiff, in support, refers to a document regarding a complaint by inmate Kevin Vinson who complained of a medical emergency. The deputy who answered the call denied medical care and did not write a report about the incident. Inmate Vinson filed a grievance, and the complaint was sustained by a supervising sergeant. The deputy was given a warning.

Neither the report nor any other material in the record indicates the medical problem that inmate Vinson suffered, so it is impossible to compare the two cases. Moreover, Deputy Presley was the deputy at issue in inmate Vinson's complaint. Presley is not a defendant in this case, and there is no evidence that any defendant in this case was involved in inmate Vinson's matter.

Plaintiff also writes in his memoranda, not supported by competent summary judgment evidence, that inmate David Williams received better medical care. Plaintiff alleges that Sgt. Dinkins and Deputy Coleman responded to the Williams matter. Neither of those deputies is a defendant in this case.

To demonstrate an equal protection claim in such a setting, a prisoner must show the existence of purposeful discrimination motivating the state action which caused the complained-of injury. Stevenson v. Louisiana Board of Parole, 265 F.3d 1060 (5th Cir. 2001). And a mere claim that prison officials reached different results with respect to decisions made regarding different prisoners does not give rise to an equal protection claim. Id.; Thompson v. Patteson, 985 F.2d 202, 207 (5th Cir. 1993). Plaintiff has done no more than show that deputies who are not defendants in this action responded to medical complaints of other prisoners in a fashion different from the response that Plaintiff received on one occasion. Defendants did not specifically address the equal protection claim in their motion, but Plaintiff did raise it in his motion, and Defendants have argued in response that they are entitled to summary judgment on the claim. Defendants are correct.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 48) and Motion for Preliminary Injunction (Doc. 67) be **denied**.

**IT IS FURTHER RECOMMENDED** that the Motion for Summary Judgment (Doc. 56) filed by defendants Wilson, Henry, Gaines, Naples, Kline, and Butler be **granted** and that all claims against those defendants be **dismissed with prejudice**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of July, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE